MAYOR AND ALDERMEN of WORCESTER & others *vs.* NORWICH AND WORCESTER RAILROAD COMPANY & others.

The right of the legislature to amend, alter or repeal the charter of a railroad corporation under the Gen. Sts. *c.* 68, § 41, includes authority both to withdraw powers granted to the corporation, and to confer new powers on it and require their exercise, and is independent of the assent of the corporation.

A lease by one railroad corporation of its railroad for a hundred years to another does not vest in the lessee any power to exercise the right of eminent domain, but this power remains in the lessor, and the legislature may deal with the lessor exclusively in amending its charter.

The St. of 1871, *c.* 343, requiring certain railroad corporations to unite in a passenger station in the city of Worcester, at one of two specified places, to be determined by commissioners appointed by this court; to extend their tracks in that city to the union station; and after the extension to discontinue portions of their present locations; is constitutional and valid, being a reasonable exercise of the right reserved to the legislature to amend, alter or repeal the charters of those corporations.

By the St. of 1871, *c.* 343, so far as it relates to the establishment of a union passenger station in the city of Worcester, the legislature intended to deal exclusively with the railroad corporations named in § 1, being the parties in interest on which it had conferred the right of eminent domain in respect to the railroads to be united in the station, and which were bound to exercise that right in performing the award of the commissioners to determine its location; and with the city of Worcester, within which the right was to be exercised; and made no provision, and were bound to make none, for notice to other parties whose interests were subordinate and derivative.

PETITION to this court on August 8, 1871, under the St. of 1871, *c.* 343, by the mayor and aldermen of the city of Worcester, the Boston and Albany Railroad Company, the Worcester and Nashua Railroad Company, and the Boston, Barre and Gardner Railroad Corporation, for the appointment of commissioners to determine the location in the city of Worcester of the

Mayor and Aldermen of Worcester *v.* Norwich and Worcester Railrcad Company.

union passenger station provided for by that statute, the provisions of which, material to the case, are printed in the margin.*

* The St. of 1871, *c.* 343, entitled " An act to provide for a union passenger station and for the removal of railroad tracks from certain public ways and grounds in the city of Worcester," provided, in § 1, that the Boston and Albany Railroad Company, the Worcester and Nashua Railroad Company, the Boston, Barre and Gardncr Railroad Corporation, the Providence and Worcester Railroad Company, and the Norwich and Worcester Railroad Company, "may and shall unite in a station in the city of Worcester for the accommodation of the passenger traffic of all said corporations; " that it should be located on the north side of the main track of the Boston and Albany Railroad Company, " between Green Street and Grafton Street, or upon the easterly side of said Grafton Street and not more than fifteen hundred feet distant therefrom ; " that the supreme judicial court, on application of either of said corporations, or of the mayor and aldermen of the city of Worcester, either in term time or vacation, in any county, should, " after notice to the other parties in interest," appoint three commissioners, who, " after due notice to and hearing said parties," should determine the precise location of the station within those limits, and the report of whom, or a major part of whom, ". being returned into and accepted by said court, shall be binding on all said parties, and the court shall enter all such orders and decrees as may be found needful to carry into effect said report."

SECTION 2 provided that the station should be erected and kept in repair at the sole expense of the Boston and Albany Railroad Company, and for the taking of the land by that corporation for the purpose.

SECTION 3 provided for the use of the station by all said corporations, the others severally paying to the Boston and Albany Railroad Company a reasonable rent therefor, which, if not agreed, should be determined, and might be revised at intervals of not less than three years, by the railroad commissioners, on petition of either corporation.

SECTION 7 directed, among other things, that, after the completion of the station, the Worcester and Nashua Railroad Company and the Norwich and Worcester Railroad Company should respectively discontinue the present locations of their railroads in portions of the city of Worcester.

SECTION 11 provided that all the said railroad corporations, except the Boston and Albany Railroad Company, " may and shall unite in the location and construction of one or more railroad tracks for their joint use," connecting with the track of the Boston and Albany Railroad Company at a specified place; and gave authority to the railroad commissioners, upon the petition of either corporation, to determine the proportions in which said other corporations should contribute to the expenses of construction and maintenance of said connecting track, and the manner of its use by them, in case they should not agree among themselves.

Notice of the petition was ordered to be served on the Providence and Worcester Railroad Company and the Norwich and Worcester Railroad Company ; and on August 26, 1871, by an order which recited that it appeared " that all the parties in interest have had due notice of said petition," the court appointed three commissioners, and directed them to report their determination within forty days, which time was afterwards extended to November 1, 1871.

Under date of October 21, 1871, the commissioners returned a report, reciting that, " having given due notice to all the parties named in the petition and order thereon," they met them in pursuance of said notice, at Worcester, on September 11, 1871 ; that all said parties were then and there present and ready to proceed with a hearing upon the matters submitted to the commissioners ; " that at the same time and place one Thornton K. Lothrop, " claiming to appear in behalf of certain trustees under a mortgage given to one Berdell and others by the Boston, Hartford and Erie Railroad Company, and also in behalf of assignees in bankruptcy, under the laws of the United States, of said Boston, Hartford and Erie Railroad Company," moved for leave to represent said trustees and assignees in the hearing ; that " no objection was made by the other parties, or by the commissioners, to the appearance of said Lothrop as the representative of said trustees and said assignees, or to a hearing in their behalf in

---

SECTION 15 provided that " said corporations may severally or jointly purchase or take such lands as are necessary for any and all the purposes afore said."

SECTION 18 provided that, " in the exercise of the powers granted by this act, said corporations, and any person or corporation sustaining damage, shall have all the rights, privileges and remedies, and be subject to all the duties liabilities and restrictions, which are or may be provided by the general laws in like cases. except as herein otherwise provided."

SECTION 20 was as follows : " The Boston, Hartford and Erie Railroad Company shall have the same rights and privileges, and for the same period, in the new locations and station accommodations provided for in this act, as in the corresponding locations and station accommodations of the Norwich and Worcester Railroad Company hereby authorized or required to be discontinued."

relation to the matter submitted to the commissioners, but the commissioners refused to grant the motion of said Lothrop for a postponement of the hearing ; " that the commissioners proceeded on that day and several subsequent days to hear the parties named in the petition and order ; and that they finally adopted, determined and awarded (by a majority) one of the two locations for the station fixed by the statute.

On October 23, 1871, the report was filed and the mayor and aldermen of the city of Worcester moved for its acceptance. Notice was thereupon ordered " to all the parties named in said report " to appear on October 28 to show cause why it should not be accepted ; and on said October 28, upon motion of the mayor and aldermen of Worcester, and of the Boston and Albany Railroad Company, another notice, for a hearing on November 13, upon the question of the acceptance of the report, was ordered to all the other railroad corporations named in the first section of the statute, and also to said Lothrop as claiming to appear in behalf of the trustees under the Berdell mortgage and of the assignees in bankruptcy of the Boston, Hartford and Erie Railroad Company.

On November 13, the mayor and aldermen of Worcester, the Boston and Albany Railroad Company, and the Boston, Barre and Gardner Railroad Corporation, appeared and joined in a motion for the acceptance of the report. The Worcester and Nashua, Providence and Worcester, and Norwich and Worcester Railroad Companies, and the trustees under the Berdell mortgage and assignees in bankruptcy of the Boston, Hartford and Erie Railroad Company also appeared, and severally moved to vacate and set aside the award of the commissioners. The appearance of the trustees and assignees was a special one. The grounds of the motions were (1) that the statute was unconstitutional and void ; (2) that the court had no jurisdiction in the premises, by reason of the non-acceptance of the statute by the Providence and Worcester, Norwich and Worcester, and Boston, Hartford and Erie Railroad Companies ; and (3) because the Boston, Hartford and Erie Railroad Company, and its assignees in bankruptcy, and the said trustees under the Berdell mortgage

and certain receivers appointed by this court in a suit brought by George Ellis and others against that corporation, had not received due notice of the proceedings, and especially of the petition for the appointment of the commissioners.

At the hearing thereupon, before *Wells*, J., the said assignees in bankruptcy put in evidence a lease executed by the Norwich and Worcester Railroad Company on February 9, 1869, of its road, for a hundred years, to the Boston, Hartford and Erie Railroad Company; the St. of 1869, *c.* 406, ratifying the same; and the record of proceedings in bankruptcy instituted in the district court of the United States for this district on October 20, 1870, against the last named corporation, wherein on March 2, 1871, it was adjudged bankrupt and they were appointed its assignees. The said trustees under the Berdell mortgage put in evidence the same lease and statute; the mortgage made to Robert H. Berdell and two other trustees, by the Boston, Hartford and Erie Railroad Company, on March 19, 1866, of its railways and other property, to secure an issue of bonds to the amount of $20,000,000, (see 107 Mass. 3 note,) and several instruments of resignation and appointment of trustees, and assignment of property and rights of property, showing that the title originally held by said Berdell and others was vested in these present trustees; and the record in the said suit of Ellis and others against the said corporation, then pending, wherein receivers of its property were appointed by this court on August 2, 1870. See 107 Mass. 9.

It also appeared that the railroad, including the station at Worcester, of the Norwich and Worcester Railroad Company, leased as above stated, was in the actual use, operation and control of the said receivers from a time prior to the filing of the original petition in this cause to August 17, 1871, and ever since in the like actual use, operation and control of the said trustees, both said receivers and said trustees claiming title under the lease.

It further appeared " that the statement in the award of the commissioners, that said Lothrop appeared before them and moved for leave to represent the said assignees and trustees in the hearing before them, was incorrect; and that in fact he ap-

**108** **SUFFOLK.**

Mayor and Aldermen of Worcester *v.* Norwich and Worcester Railroad Company.

peared only specially to insist upon the right of the Boston, Hartford and Erie Railroad Company, and its representatives, to notice of the application for the appointment of commissioners and of the hearing before the commissioners, and to object to the further proceeding of the commissioners without such notice." And " it was agreed by all parties to this cause, that the said appearance of said Lothrop was not so made as to be a waiver of any right to object to the want of notice upon the application for the appointment of commissioners, or of the hearing before them, if any such right existed."

The said trustees and assignees also offered proof that the St of 1871, *c.* 343, had never been formally accepted by the Boston, Hartford and Erie, or Norwich and Worcester Railroad Compa nies; and like proof was offered by the Providence and Worcester, Norwich and Worcester, and Worcester and Nashua Railroad Companies, in respect to themselves.

The said objecting railroad companies also offered proof that, to extend their railroads, as required by the statute, to a union station at the place designated by the commissioners, would require the taking of much land from private persons for the location of the extensions, through densely settled portions of a populous city; that the extended tracks would cross many much travelled highways; that their construction would involve great expenditures, in the cases of some of the corporations of several hundred thousand dollars, the extension required of the Norwich and Worcester Railroad being, for instance, not less than 5500 feet; that by the terms of the statute some of them would then be required to discontinue without compensation valuable portions of their present locations, the discontinuance required of the Norwich and Worcester Railroad being, for instance, not less than 4367 feet; and that a compliance with the provisions of the statute would largely increase the expenses of operating each of the railroads named therein, except the Boston and Albany Railroad. Some of them also offered to prove that neither the convenience nor the safety of the public would be promoted by the extensions which the statute required of them. The charters of all the railroad corporations named in the statute were also offered in evi-

dence, showing that they were subject under the Gen. Sts. *c.* 68, § 41, to alteration, amendment or repeal at the pleasure of the legislature.

The judge reported the case for the determination of the full court on the several motions of the contesting parties; including the proofs, and all the offers of proof, made by them, so far as the latter were competent and material; such order and decree to be made therein as law and justice should require.

*E. R. Hoar*, ( *G. S. Hale* with him,) for the Boston and Albany Railroad Company; and *D. Foster*, ( *T. L. Nelson* with him,) for the Mayor and Aldermen of Worcester; (*F. P. Goulding*, for the Boston, Barre and Gardner Railroad Corporation, with them) ; in support of the motion for the acceptance of the report of the commissioners. 1. The assignees in bankruptcy and trustees under the mortgage of the Boston, Hartford and Erie Railroad Company were not "parties in interest" within the meaning of the St. of 1871, *c.* 343; citing to this point various sections of that statute, and also the Gen. Sts. *c.* 63, §§ 115, 116; Sts. of 1865, *c.* 175, § 3; 1867, *c.* 298; 1868, *c.* 348; 1869, *c.* 406, § 4; *Ingersoll* v. *Stockbridge & Pittsfield Railroad Co.* 8 Allen, 438; *Langley* v. *Boston & Maine Railroad*, 10 Gray, 103 ; *Nelson* v. *Vermont & Canada Railroad Co.* 26 Verm. 717 ; *Durfee* v. *Old Colony & Fall River Railroad Co:* 5 Allen, 230, 244.

2. The legislature had constitutional power to compel the alterations and expenditures required by the statute. Rev. Sts. *c.* 44, § 23. Gen. Sts. *c.* 68, § 41. *Fitchburg Railroad Co.* v. *Grand Junction Railroad & Depot Co.* 4 Allen, 198. *Commonwealth* v. *Eastern Railroad Co.* 103 Mass. 254.

*W. G. Russell & T. K. Lothrop*, ( *R. R. Bishop* with them,) for the assignees in bankruptcy and trustees under the mortgage of the Boston, Hartford and Erie Railroad Company, in opposition to the acceptance of the commissioners' report. 1. Under the St. of 1871, *c.* 343, the Boston, Hartford and Erie Railroad Company, its trustees under the Berdell mortgage, and the assignees in bankruptcy, as representing that corporation, were "parties in interest," and entitled to notice and hearing on the application for the appointment of commissioners, and to notice and hearing

by the commissioners on the question of the location of the union station; and for want of such notice the proceedings are void. Gen. Sts. *c.* 90, §§ 20, 21.  *Hunt* v. *Bay State Iron Co.* 97 Mass. 279.  St. 1871, *c.* 343, § 20.  *Lancaster* v. *Pope*, 1 Mass. 86. *Commonwealth* v. *Coombs*, 2 Mass. 489.  *Commonwealth* v. *Peters*, 3 Mass. 229.  *Commonwealth* v. *Cambridge*, 4 Mass. 627, and 7 Mass. 158.  *Commonwealth* v. *Egremont*, 6 Mass. 491.  *Stone* v. *Boston*, 2 Met. 220.  *Bagg's case*, 11 Co. 93, 99.  *The King* v. *Cambridge University*, 1 Stra. 557.  *Cooper* v. *Board of Works*, 14 C. B. (N. S.) 180.  *Capel* v. *Child*, 2 Cr. & Jerv. 558.  *Bonaker* v. *Evans*, 16 Q. B. 162.  Opinion of Parke, B., *In re Hammersmith Rent-charge*, 4 Exch. 87, 96, and cases cited.  *Kinderhook* v. *Claw*, 15 Johns. 537.  Gen. Sts. *c.* 43, §§ 3, 6; *c.* 63, §§ 15, 16.

2. The Boston, Hartford and Erie Railroad Company was entitled to notice, of common right, apart from the statute, as a party in interest.  Its title under the lease from the Norwich and Worcester Railroad Company was a freehold, and notice to the lessor or reversioner was insufficient to bind it.  Gen. Sts. *c.* 90, §§ 20, 21.  *Cornish* v. *Gest*, 2 Cox Ch. 27.  *Ellis* v. *Welch*, 6 Mass. 246.  *Parks* v. *Boston*, 15 Pick. 198.  *Stone* v. *Boston*, 2 Met. 220.

3. The statute, by discontinuing the locations of the corporations therein named, and requiring them to locate and construct new railroads not within their existing locations, interferes with vested rights, impairs the obligation of contracts, and appropriates private property to public use without providing compensation therefor; and is therefore unconstitutional and void.  *Commonwealth* v. *Essex Co.* 13 Gray, 239, 253.  *Durfee* v. *Old Colony & Fall River Railroad Co.* 5 Allen, 230, 240.  The cases of *Fitchburg Railroad Co.* v. *Grand Junction Railroad & Depot Co.* 4 Allen, 198, and *Commonwealth* v. *Eastern Railroad Co.* 103 Mass. 254, are not in conflict with this doctrine.

*G. F. Hoar*, for the Worcester and Nashua Railroad Company, also in opposition to the report, argued in writing to the same points; and further, that to be binding on any party the report must be binding on all the parties.

*P. E. Aldrich*, for the Providence and Worcester Railroad Company, in opposition to the report, cited, to the point of the unconstitutionality of the statute, *Boston & Lowell Railroad Co.* v. *Salem & Lowell Railroad Co.* 2 Gray, 1, 30, 31; *Commonwealth* v. *New Bedford Bridge*, Ib. 339, 348; *Commonwealth* v. *Essex Co.* 13 Gray, 239, 253; *State* v. *Noyes*, 47 Maine, 189, 209 *English* v. *New Haven & Northampton Co.* 32 Conn. 240; *Roxbury* v. *Boston & Providence Railroad Co.* 6 Cush. 424; *Oliver* v. *Washington Mills*, 11 Allen, 268.

*W. W. Rice*, for the Norwich and Worcester Railroad Company, also in opposition to the report.

CHAPMAN, C. J.* The St. of 1871, *c.* 343, provides that the Boston and Albany, the Norwich and Worcester, the Providence and Worcester, the Worcester and Nashua, and the Boston, Barre and Gardner Railroad Companies may and shall unite in a station in the city of Worcester, for the accommodation of the passenger trains of all said corporations. It further provides that the station shall be located on the northerly side of the main tracks of the Boston and Albany Railroad Company, between Green Street and Grafton Street, or upon the easterly side of Grafton Street, and not more than fifteen hundred feet distant therefrom. It does not determine which of these locations shall be adopted, but authorizes this court to appoint three commissioners to hear the parties and determine that question, and their report, being returned to the court and accepted, is to bind all the parties. The station is to be erected and kept in repair by the Boston and Albany Railroad Company, and is to be used by the other companies for compensation as prescribed by the act. It provides for a discontinuance of the present stations of the several roads, and authorizes the other corporations to extend their tracks and do whatever else is necessary to unite at this union station, and take lands for the purpose; and with the consent of the mayor and aldermen of Worcester grades of streets may be changed.

The commissioners have been appointed, and have selected one of the places designated in the act, for the station, and their report is presented to us for acceptance. Some of the parties

* COLT, J., did not sit in this case.

named in the act object to the whole proceeding, and objections are made to it in behalf of other parties not named in the act.

Proof is offered, that to extend the several railroads named to a union passenger station east of Grafton Street would make it necessary for each of them to extend its tracks a great distance, amounting in the aggregate to many thousand feet, and at a cost amounting in the aggregate to several hundred thousand dollars; and that these tracks must be laid through the heart of a populous city, and crossing over many highways, and lands must be taken now belonging to private persons. Some of the corporations have never assented to the act, and it is contended that their assent is necessary to its validity. Notice has been given by the commissioners to the parties above named; but it is contended that other parties not named were entitled to notice. For these reasons, and some others to be adverted to hereafter, both the validity of the act, and of the proceedings under it, are denied, and it is contended that the report ought not to be accepted.

On the other hand, the petitioners contend that the act is valid under the provisions of the Gen. Sts. *c.* 68, § 41; which are similar to prior statutes, affecting all railroads that have been chartered since March 11, 1831, and subjecting them to alteration, amendment or repeal at the pleasure of the legislature; and that the proceedings under the act are valid.

The court has repeatedly had occasion to consider the provisions of the General Statutes referred to. *Fitchburg Railroad Co.* v. *Grand Junction Railroad Co.* 4 Allen, 198. *Commonwealth* v. *Eastern Railroad Co.* 103 Mass. 254. *Commonwealth* v. *Essex Co.* 13 Gray, 239. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446. In conformity with these decisions, we think that the act of 1871, *c.* 343, is a reasonable exercise of the right thus reserved to the legislature. In chartering a railroad corporation, and conferring upon it the power to exercise the right of eminent domain, a power is granted which is carefully guarded by the Constitution. The property must be taken for public uses. If the power were granted by the legislature for private uses only, the grant would be unconstitutional and void. The public use, for which it is granted to a railroad

NOVEMBER 1871. 113

Mayor and Aldermen of Worcester *v.* Norwich and Worcester Railroad Company.

corporation, is as a way for public travel and the transportation of property. One of the most obvious reasons for reserving to the legislature the right to alter, amend or repeal such charters is to enable it to compel an unwilling corporation to perfect and extend its connections with other railroads, as the convenience of the public may from time to time require. The Boston and Albany Railroad Company must of necessity have a passenger station in Worcester; and it is obviously important to the public that all the other railroads named shall be connected with it. At any rate, the legislature was the exclusive judge as to that matter, and an amendment of the several charters, so as to secure such an object, was a reasonable exercise of their reserved right. It is no valid objection to such amendments, that they require corporations to extend their tracks, and to exercise the right of eminent domain for this purpose, and to incur additional expense. The power to extend their tracks is often granted at their own request; and is granted with no less propriety when the interests of the public require it. The power to alter a charter includes the right to take away some of the powers granted by it, or to add new powers without which improvements of the greatest importance would be *ultra vires.* Their compensation for the outlay is in the tolls they receive from travellers or others.

It is contended that, if this act is sustained, it will imply a power in the legislature to require a railroad corporation to extend its track to the state line in any direction. This is putting an extreme case; but we have no occasion to consider such a case, for all the roads named in the act, and required to extend their tracks, have a terminus in the city of Worcester, and are to be extended only through a portion of the city to the station of the Boston and Albany Railroad. The power to require a track to be lengthened certainly exists to this extent, if it exists at all.

As the right of the legislature to alter, amend or repeal the charters of these corporations is absolute, and not dependent upon their consent, it is immaterial whether such consent has been given or not.

Nor was notice of the appointment or the proceedings of the commissioners necessary to be given to parties not specified in

the act; the terms of the act not requiring such notice. It is undoubtedly true that the interests of many parties are affected more or less directly by the required change; as for example, parties who have contracts for running expresses over the several roads, or who have leases of rooms in the several station-houses for restaurants or other uses, or who have various other contracts with the corporations for the transaction of business, and more especially persons whose lands are liable to be taken. But the Boston, Hartford and Erie Railroad Company, which has a lease of the Norwich and Worcester Railroad, the trustees of the Berdell mortgage, and the assignees in bankruptcy of the Boston, Hartford and Erie Railroad Company, are the parties most directly and deeply interested. All these parties have derived their interests from the original corporations, to whom the power to exercise the right of eminent domain was granted, and they hold these as signed and derivative interests under express or implied authority granted to those corporations by the legislature. Yet none of these leases or assignments can be construed to extend to the lessees or assignees the power to exercise the right of eminent domain, or to restrict the right of the legislature to alter or repeal the charters. Their rights are subordinate to that right; and if the legislature shall see fit to exercise it, they are not bound to give notice to any of these parties. The new union passenger house might have been established by the act itself, without the agency of any commissioners. The act has provided for everything except the choice between two fixed places. This selection constituted the whole duty and authority of the commissioners; and as all other questions were settled by the act, there was no occasion to hear any parties, except those who were required to do the work prescribed, and the city of Worcester whose streets were subject to be changed. There is no ground for the assertion that other parties had any right to be heard on the question of the selection between the two places named in the act. The lease by the Norwich and Worcester Railroad Company did not make the lessees, or their representatives, parties to the grant of power to exercise the right of eminent domain. That right remained in the original corporation, and the legislature might properly deal with it exclusively in amending their charter.

It is contended that, by the terms of the twentieth section of the act, the Boston, Hartford and Erie Railroad Company is made a party to the proceedings. We do not so interpret it. It gives them rights in the new location and station, when completed, which will enable them to enjoy the benefit of their lease; but does not give them a right to be heard before the commissioners. *Report accepted.*