STATE, EX REL. FARMERS ELEVATOR COMPANY, APPELLEE, v. MISSOURI PACIFIC RAILWAY COMPANY, APPELLANT.*

FILED MARCH 19, 1908. No. 15,128.

1. Constitutional Law: DUE PROCESS OF LAW. Section 1, ch. 105, laws 1905, is not subject to the objection of being special legislation, or of allowing the taking of private property without just compensation, or of depriving the citizen of his property without due process of law. *State v. Missouri P. R. Co.,* ante, p. 15.

2. Railroads: COURTS: JURISDICTION. In consideration of the franchises that they receive from the state, railroad companies agree to perform certain duties toward the public, and the power of determining those duties and enforcing their performance is vested in the courts of the state.

* Pending on error in supreme court of United States.

3. ———: STATE CONTROL. To deny to the state the power to require the erection of depots, the construction of side-tracks, and such other facilities as the public necessities require, would enable railway companies to create a monopoly in handling the products of the country adjacent to their lines, and to turn it over to whomever they chose.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*J. W. Orr, B. P. Waggener* and *Reavis & Reavis,* for appellant.

*R. C. James* and *C. Gillespie, contra.*

DUFFIE, C.

The petition in this case recites that the relator, the Farmers Elevator Company of Strausville, Nebraska, is a corporation organized under the laws of this state, and engaged in operating a grain elevator on land adjacent to defendant's right of way at the station of Strausville, Richardson county; that the elevator has a capacity of 15,000 bushels, and was completed prior to April 1, 1905. It is further alleged that the defendant company has refused to construct a side-track to said elevator, by reason of which the plaintiff has been unable to load grain directly from its elevator into the cars of the defendant to its great damage; that application had been made for a site for the elevator on the defendant's right of way at Strausville, and the application refused, and that thereafter a written request was made on the defendant company to extend its side-track to the elevator, which was also refused; that defendant had for a time prior to April 1, 1905, maintained a side-track to another elevator at Strausville, and that plaintiff is not afforded equal facilities with other patrons of the road. A writ of mandamus was asked requiring the defendant to construct a side-track to the plaintiff's elevator and to equip and maintain the same. The answer of the defendant was substantially

the same as the answer filed in *State v. Missouri P. R. Co., ante,* p. 15. The district court ordered a mandamus to issue as prayed in the petition, and defendant has appealed.

In *State v. Missouri P. R. Co., supra,* we have considered and passed on most of the questions presented by the record in this case. In that case the state recovered the penalty prescribed in chapter 105, laws 1905, for failure of the railroad company to construct a side-track to an elevator erected by the Manley Cooperative Grain Association on land adjacent to the right of way of the railroad company. In our former opinion, we did not discuss at length the claim made by the defendant that the requirement of the statute that a site should be furnished by the railroad company on its right of way for the building of an elevator of the prescribed capacity, or a side-track extended to the location of an elevator built adjacent to the right of way of the railroad company in case it refused to furnish a site on its right of way where side-track facilities existed, was a taking of the property of the company without due process of law, in violation of the federal constitution and the constitution of this state. Since the opinion in *State v. Missouri P. R. Co.* was filed, we have had time to further consider the question made by this objection, and further reflection has served to confirm us in the opinion that the statute is not open to the objection urged by the defendant. It is not contended that a railroad company is not obliged to furnish facilities for the receipt and delivery of passengers and freight offered for carriage. In *State v. Republican V. R. Co.,* 17 Neb. 647, we held that it was a duty imposed on the railroad company by the common law to maintain depots and warehouses for the receipt and delivery of passengers and freight, and, on a rehearing of the same case, we held that the constitution and statutes of this state imposed on railroad companies that duty, which might be enforced by the court in case of neglect of the company to furnish the public with adequate facilties. See 18 Neb. 512. In this

view of the law, and the duty of the railroad company to furnish facilities to shippers over its line, there can be no doubt that it would, in the absence of any provision made for receiving grain intended for shipment, be compelled to erect and maintain suitable and adequate facilities for that purpose. While not speaking directly to the point, the supreme court of the United States in *Missouri P. R. Co. v. Nebraska,* 164 U. S. 403, strongly intimates that a railroad company may be compelled to maintain elevators or warehouses for the receipt of grain offered by patrons of the road, and equal facilities to all persons of access from their own lands to its tracks, and the use of the tracks for the purpose of shipping or receiving grain or other freight.

It cannot be denied that the state may require a railroad company to renew its ties and tracks when the safety of the public demands it. It may also require the company to construct expensive viaducts and keep them in repair. *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549, affirmed by the supreme court of the United States, 170 U. S. 57. Our general railroad law provides: "Such corporations shall be authorized and empowered to lay out, locate, construct, furnish, maintain, operate, and enjoy a a railroad with single or double tracks, with such side-tracks, turnouts, offices, and depots as shall be necessary, between the places of the termini of said road." Comp. St. 1907, ch. 16, sec. 75. In *State v. Republican V. R. Co.,* 18 Neb. 512, we held that this provision of the statute required the railroad company to furnish all necessary depots, and this holding must on principle extend to necessary side-tracks demanded for public use. Even in the absence of this statute, under which the defendant constructed and is operating its road, it would seem that the state has power to order such side-tracks as the convenience and necessity of its citizens demand. It is true that there are one or more elevators at the station of Strausville, but the farmers in that vicinity do not seem willing

15

to deal with the parties operating them, and have invested their money in the erection of another one of the requisite capacity, and this expenditure is evidence of a satisfactory character of some reason existing for another elevator at that place.

What would be the result of a denial of the power of the state to require the construction of side-tracks under the circumstances of this case? It would require the farmers to deal with the elevators doing business prior to the building of the one for which the side-track is demanded. In other words, the railroad company could create a monopoly of the grain business, and turn it over to whomever it saw fit. It could compel the producers adjacent to every station on its line to deal with the parties having elevator and side-track facilities for handling their produce. To make the railroad company the sole and ultimate judge of the place or building from which it will receive its freight, or to dictate to the public the party to whom the produce of the country shall be delivered or sold, would give such corporations power to control the market of the country and to grant a monopoly in favor of any party whom it might choose, and to promote or retard at pleasure the growth, prosperity and welfare of cities and towns. In consideration of the franchise that they receive from the state, railroad companies agree to perform certain duties toward the public, and the power of determining those duties and enforcing their performance is vested in the courts of the state. The evidence shows that the elevator in question handles about 10,500 bushels of grain each month under the adverse circumstances under which the proprietors are compelled to work. It fairly appears that this business will be greatly increased when adequate facilities are afforded it in handling and shipping grain, and that the business will be a continuing one. As said by the supreme court of Massachusetts in *Commonwealth v. Eastern R. Co.*, 103 Mass. 254, 4 Am. Rep. 555: "If the directors of a railroad were to find it for the interest of the stockholders to refuse to

carry any freight or passengers except such as they might take at one end of the road and carry entirely through to the other end, and were to refuse to establish any way stations or do any way business for that reason, though the road passed for a long distance through a populous part of the state, this would be a case manifestly requiring and authorizing legislative interference.   *   *   * And on the same ground, if they refuse to provide reasonable accommodation for the people of any smaller locality, the legislature may reasonably alter and modify the discretionary power which the charter confers upon the directors so as to make the duty to provide the accommodation absolute.   *   *   *   The objection that it takes the property of the company and appropriates it to the benefit of others is not valid.   The depot which they are required to build is to be their own, like all the other depots, and their compensation for all their outlays is in their freights and fares."   The above remarks apply with equal force to the construction or extension of side-tracks required for the public convenience or necessity.   We can see no valid objection to the enforcement of this statute, and, this case being a proper one, its provisions should be enforced.

We recommend an affirmance of the judgment of the district court.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.